NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| CATHERINE HRBEK, | : | **Hon. Dennis M. Cavanaugh** |
|  | : |  |
| Plaintiff, | : | **OPINION** |
| v. | : |  |
| MICHAEL J. ASTRUE, | : | Civil Action No. 09-2160 |
| COMMISSIONER OF SOCIAL | : |  |
| SECURITY | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |
|  | : |  |

**DENNIS M. CAVANAUGH, U.S.D.J.**:

This matter comes before the Court upon Catherine Hrbek's ("Plaintiff") appeal from the

Commissioner of Social Security's ("Commissioner") final decision denying Plaintiff's request for

Supplemental Security Income ("SSI") under the Social Security Act (the "Act") for the period of

May 24, 1999 through April 6, 2001.  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.

For the reasons set forth below, the final decision entered by the Administrative Law Judge ("ALJ"),

Joel H. Friedman, is **affirmed**.

I.     **BACKGROUND**

A.     *Procedural History*[1]

Plaintiff filed an application for SSI benefits on May 24, 1999, alleging disability beginning

March 15, 1999.   The application was denied on August 2, 1999 and Plaintiff filed for

_____

[1]Procedural history taken from Plaintiff's brief (Plaintiff's Brief ("Pl. Br."))  and previous
ALJ opinions (Administrative Transcript ("Tr.") at 7-16, 182-92).

1

Reconsideration on September 2, 1999.  Plaintiff was again denied benefits on November 10, 1999.

Plaintiff requested a hearing before an ALJ, and on March 21, 2001 ALJ Friedman issued an opinion

denying Plaintiff SSI benefits.  Plaintiff requested review from the Appeals Council, and on August

31, 2001 the Appeals Council found no grounds for review.  Plaintiff thereafter commenced action

in the United States District Court, District of New Jersey on November 1, 2001.

While this claim was pending administrative and judicial appeals, Plaintiff filed a subsequent

claim on April 6, 2001.  On January 27, 2003, a different ALJ found Plaintiff to be disabled from

the period of April 6, 2001 on, and therefore granted her SSI benefits for that time period.

With regard to the claim at issue, the transcript could not be located when Plaintiff filed an

appeal in District Court, therefore in January 2002 a Sentence 6 Consent for Remand was filed.

Almost three years later, in December 2004, Plaintiff filed a Motion to Compel enforcement of the

remand, which was denied because the Commissioner found the missing transcript.  The District

Court affirmed the ALJ on August 3, 2006.  Plaintiff appealed to the Third Circuit, which remanded

the case to the District Court.  The case was then remanded to the Appeals Council, which thereafter

remanded to the ALJ, requiring the ALJ to evaluate Plaintiff's obesity, consider the fact that Plaintiff

was found disabled sixteen days after the ALJ's denial, re-evaluate Plaintiff's residual functional

capacity (including obesity and postural limits) and obtain a vocational expert.  A new hearing was

held on February 7, 2008, before ALJ Friedman.  The ALJ issued an unfavorable decision on April

14, 2008.  The Appeals Council declined jurisdiction on March 10, 2009.  Plaintiff thereafter

commenced this action.

B.      Facts

1. The Findings of the Administrative Law Judge[2]

ALJ Friedman made the following findings regarding Plaintiff's application for SSI: (1) Plaintiff did not engage in substantial gainful activity from May 24, 1999 to April 6, 2001 (the period in question); (2) Plaintiff suffered from the severe impairments asthma, sinusitis, diabetes and obesity; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed statutory impairments; (4) Plaintiff had the residual functional capacity to engage in light work subject to environmental limitations (she could stand and walk up to six hours a day in an eight hour workday, occasionally lift and carry ten pounds, occasionally lift and carry up to twenty pounds, occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl but could never climb ladders, ropes or scaffolds, and had to avoid concentrated exposure to temperature extremes, environmental and pulmonary irritants due to her asthma); (5) in the past fifteen years, Plaintiff had not had any qualifying "prior past relevant work experience"; (6) Plaintiff was forty years old when she filed her application; (7) Plaintiff has a "limited" 11th grade education; (8) Plaintiff has not had any "past relevant work experience" in the last fifteen years, therefore the issue of any transferable work skills material to the finding of disability is not relevant; (9) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she could perform; and (10) Plaintiff was not under a "disability" as defined the Social Security Act from May 24, 1999 to April 6, 2001.

---

[2] The Court relies on the ALJ's April 18, 2008 decision (Tr. 182-192).

2.      *Plaintiff's Medical History and Evidence*

Plaintiff alleges that she has been disabled since March 15, 1999, as a result of suffering from asthma, diabetes, sinusitis and obesity. Her medical history and evidence pertaining to her impairments are summarized below.

### A. Pulmonary Function Test (April 13, 1999)

In a report prepared for the Division of Disability Determination Services ("DDS") Dr. Alfred D. Carilli performed a pulmonary function test on April 13, 1999. The test results showed near normal pulmonary function without significant response to bronchodilator. "Functional residual capacity" was described as normal. (Tr. 118-20, 143).

### B. Consultative Exam by Dr. Samuel Wilchfort (July 15, 1999)

Dr. Samuel Wilchfort conducted an internal consultative examination on July 15, 1999 for DDS. Plaintiff alleged several asthma attacks exacerbated by dust, exertion and emotional difficulties. Plaintiff stated that she smoked cigarettes, but that she had cut back her smoking from two packs a day to half a pack a day.

Upon examination, Plaintiff's lungs were clear, without wheezing. A chest x-ray was normal. A pulmonary function test revealed moderate obstruction, which improved to only mild obstruction with bronchodilators.

Dr. Wilchfort concluded that the plaintiff did have asthma, exacerbated by her cigarette smoking, and that the asthma comes on with emotional upset and dust. (Tr. 121).

### C. Residual Physical Functional Capacity Assessment (August 2, 1999)

On August 2, 1999 Dr. Carducci, a physician for DDS, conducted an assessment of Plaintiff's physical functional abilities. The disability determination noted that Plaintiff was slightly obese, but

had clear lungs and only a mild obstructive disease. Based on this medical evidence, Dr. Carducci determined Plaintiff was able to stand/walk for about six hours in an eight-hour workday, sit for about six hours in an eight hour workday, occasionally lift/carry up to twenty pounds, occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl, and never able to climb ladders, ropes or scaffolds. (Tr. 64-75).

### D. General Medical Report (October 25, 1999)

In a report requested by DDS, Plaintiff's treating physician Dr. Medhat El-Amir reported that Plaintiff had recently quit smoking and experienced significant improvement in respiratory symptoms. (Tr. 140).

### E. Disability Determination (November 8, 1999)

On November 8, 1999, Dr. Burton Levine, a state medical consultant, reviewed and affirmed the conclusions of Dr. Calducci, and determined that Plaintiff was not disabled. (Tr. 75, see Tr. 84).

### F. Pulmonary Function & Cardio Pulmonary Exercise Evaluation (March 29, 2001)

Plaintiff was given a cardio-pulmonary stress evaluation on March 29, 2001. Dr. Faheid concluded that the pulmonary function results were suboptimal and consistent with obstructive lung disease. The non-diagnostic study was terminated after 6 minutes and 37 seconds due to Plaintiff's shortness of breath.  Plaintiff displayed poor exercise tolerance. (Tr. 315-17).

### 3. *Plaintiff Catherine Hrbek's Testimony (March 15, 2000)*

Plaintiff testified that she can sit for "maybe 5, 10 minutes the most" (Tr. 24) but was forced to concede that she had been sitting for at least 45 minutes during the hearing, and was neither wheezing nor out of breath. (Tr. 48).  Plaintiff claimed she has asthma attacks on average two to three times a month (Tr. 25) and uses her nebulizer pump three times a day. (Tr. 26).  With regard

to past work experience, Plaintiff testified that her last job was as a crossing guard (Tr. 28), which she claims aggravated her asthma. (Tr. 51). She testified that she worked shifts of an hour at a time, with an hour to an hour and a half of break time in between. (Id.) Plaintiff claimed she has gone to the emergency room ten to fifteen times in the last year (Tr. 40),[3] but the record only contains evidence of two such trips, one for a rash (Tr. 133) and the other for a sore throat and cough. (Tr. 156). Plaintiff testified that she has trouble sleeping, and will wake up wheezing and a need to sit up. (Tr. 37-38). She can walk half a block before she starts wheezing. (Tr. 38). Plaintiff claimed she can stand "for maybe 5 minutes" and then she has to sit down. (Tr. 38-39). She said she cannot go outside when its windy because she will start wheezing. (Tr. 39). Plaintiff described that when she has an asthma attack it "feels like [she is] dying and it scares [her] to death." (Tr. 41). During an attack, her chest hurts and her throat "basically . . . closes up" such that she "can't catch [her] breath." (Tr. 42).

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence

---

[3]The ALJ requested the missing hospital reports, but they were not included in the record. (Tr. 56).

6

is considered "substantial."   For instance,

> [a] single piece of evidence will not satisfy the substantiality test if
> the [Commissioner] ignores, or fails to resolve, a conflict created by
> countervailing evidence.   Nor is evidence substantial if it is
> overwhelmed by other evidence–particularly certain types of evidence
> (e.g. that offered by treating physicians)–or if it really constitutes not
> evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v.

Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).   The ALJ must make specific findings of fact to

support his ultimate conclusions.   Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290

(3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review."   Jones v. Barnhart,

364 F.3d 501, 503 (3d Cir. 2004).   As such, it does not matter if this Court "acting de novo might

have reached a different conclusion" than the Commissioner.   Monsour Med. Ctr. v. Heckler, 806

F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d

Cir. 1986)).   "The district court . . . is [not] empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder."   Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)

(citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).   A Court must nevertheless "review

the evidence in its totality."   Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing

Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).   In doing so, the Court "must 'take into account

whatever in the record fairly detracts from its weight.'"   Id. (quoting Willibanks v. Sec'y of Health

& Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning.

Accordingly,

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  If the ALJ fails to properly indicate why evidence was rejected, the court is not permitted to determine whether the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

## III.   APPLICABLE LAW

### A.   The Five-Step Process

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. A claimant is considered disabled under the Social Security Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A).  A claimant bears the burden of establishing his or her disability.  Id. § 423(d)(5).

To make a disability determination, the Commissioner follows a five-step process pursuant to 20 C.F.R. § 416.920(a).  Under the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  Substantial

8

gainful activity is work that involves doing significant and productive physical or mental duties, and is done (or intended) for pay or profit. 20 C.F.R. § 416.972. If the claimant establishes that she is not currently engaged in such activity, the Commissioner then determines whether, under step two, the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). The severe impairment or combination of impairments must "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The impairment or combination of impairments "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. If the Commissioner finds a severe impairment or combination of impairments, he then proceeds to step three, where he must determine whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in Appendix 1 of the regulations ("Listings"). 20 C.F.R. § 416.920(d). Upon such a finding, the claimant is presumed to be disabled and is automatically entitled to benefits. Id. If, however, the claimant does not meet this burden, the Commissioner moves to the final two steps.

Step four requires the Commissioner to determine whether the claimant's residual functional capacity sufficiently allows her to resume her previous work. 20 C.F.R. § 416.920(e). If the claimant can return to her previous work, then she is not disabled and therefore cannot obtain benefits. Id. If, however, the Commissioner determines that the claimant is unable to return to her prior work, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner, who must find that the Claimant can perform other work consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. § 416.920(g). Should the Commissioner fail to meet this burden, the claimant is entitled to social security benefits. 20 C.F.R. § 416.920(a)(4)(v).

9

*B. The Requirement of Objective Evidence*

Under the Act, disability must be established by objective medical evidence.  "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."  42 U.S.C. § 423(d)(5)(A).  Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section."  Id.  Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.  Credibility is a significant factor.  When examining the  record "the adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186 (July 2, 1996).  To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record.  Id.  The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4).  A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. § 416.929(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).


**IV.   ANALYSIS**

On appeal, Plaintiff argues that there is sufficient evidence in the record to establish

10

eligibility and entitlement for the benefits applied for. Alternatively, Plaintiff argues that the Commissioner's final administrative decision is not based on substantial evidence of record, specifically, that the ALJ failed to combine Plaintiff's obesity with her pulmonary condition at step three, and that the decisional residual functional capacity found at step four was neither explained nor based on the record. (Pl. Br. 13, 17, 22).

Disability must be established by objective medical evidence: "an individual shall not be considered to be under a disability unless he furnishes such medical evidence and other evidence of the existence thereof." 42 U.S.C. § 423(d)(5)(A). In the Third Circuit, "allegations of pain and other subjective symptoms must be supported by objective medical evidence." Hartranft v. Apfel, 181 F.3d at 362. It is not sufficient for the ALJ to rely on the assertions of a plaintiff's suffering. See Scatorchia v. Comm'r of Soc. Sec. 137 Fed. Appx. 488 (3d. Cir. 2005); Garibay v. Comm'r of Soc. Sec. 336 Fed. Appx. 152 (3d. Cir. 2009); Haseler v. Acting Comm'r of Soc. Sec. 33 Fed. Appx. 631 (3d. Cir. 2002).

While it was established that Plaintiff did suffer from asthma, diabetes, sinusitis and obesity, none of the medical reports prepared by DDS or any of Plaintiff's doctors found Plaintiff to be disabled.  (See Tr. 118-120, 121, 64-75, 315).  She was diagnosed with "mild obstructive disease" with clear lungs on August 2, 1999 (Tr. 64-75), and on April 13, 1999, Plaintiff's results showed a "normal pulmonary function test" (Tr. 118).  The medical experts found that Plaintiff's medical condition neither met nor equaled one of the Commissioner's Listings.

Additionally, Plaintiff's own testimony of the severity of her ailments cannot be relied on. This Court does not find Plaintiff's assertions of extreme symptoms, specifically becoming short of breath after sitting (or standing) for a short period of time credible based on the reports of both the

11

treating and the examining physicians.  During the March 15, 2000 hearing, Plaintiff admitted that she had been sitting and answering questions for approximately forty-five minutes and was experiencing no shortness of breath or other symptoms of asthma, directly contradicting her previous testimony of only being able to sit or stand for five to ten minutes at a time before succumbing to bouts of wheezing and asthma attacks. (Tr. 48).  "[W]hile an ALJ must consider a claimant's subjective complaints, an ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." Gantt v. Comm'r of Soc. Sec., 205 Fed. App'x 65, 67 (3d Cir. 2006) (citations omitted). Therefore this Court rejects Plaintiff's argument that she is entitled to disability benefits based on the record.

Plaintiff next argues that the ALJ's decision is not supported by substantial evidence and that the ALJ erred at steps three and four.

*A. Combination of Impairments - Step Three*

The third step calls for the ALJ to compare the combined effect of all of claimant's impairments with one or more of the Commissioner's listings, and if the impairment or combination of impairments is severe and meets the requirements of the listing, the claimant is found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Here, Plaintiff argues that the ALJ did not take into account whether her obesity exacerbated her pulmonary condition.

Social Security Ruling 02-01p advises that obesity may be classified as medically equivalent to a listed impairment, on its own or in combination with other impairments.  SSR 02-01p, 2002 SSR LEXIS 1, 2000 WL 628049 (Sept. 12, 2002).  Though the Ruling recognizes that "obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body

mass places on these systems," it also notes that assumptions will not be made "about the severity or functional effects of obesity combined with other impairments." Id. Instead, each case will be evaluated "based on the information in the case record." Id. Based on the evidence, and the guidance of the Social Security Ruling, it is clear that the ALJ did not err in his determination that Plaintiff's obesity was not an exacerbating factor regarding her disability.

First, none of the medical evidence in the record supports the notion that Plaintiff's obesity exacerbated her other ailments. The DDS report filed on July 15, 1999 does not include Plaintiff's obesity as a reason for her ceasing to work, and only classifies her as "fairly obese." (Tr. 122) The October 25, 1999 report did not even diagnose Plaintiff as obese. (Tr. 141).

Additionally, according to Dr. Fion, on July 17, 2001, Plaintiff weighed 206 pounds at 5'5", making her only "slightly obese." (Tr. 299). In her testimony, Plaintiff does not assert that her obesity exacerbated her condition. Plaintiff claimed that "she is so scared to go out lately to do anything because of the asthma," but makes no mention of how her obesity affects her functionally or medically. (Tr. 53). The only instance Plaintiff testified regarding her obesity was to confirm that her weight had increased to 200 pounds because of the Prednisone she was taking, but that she subsequently lost the weight. In March 2000, Plaintiff testified she weighed 150 pounds (Tr. 36). By March 2001, she weighed 201 pounds.

Plaintiff's argument that the ALJ did not combine her impairments and compare them to the listings fails because the ALJ specifically refers to Plaintiff's obesity in his decision. In reviewing the legal standard at both step three and step four, ALJ Friedman made it clear that the Plaintiff's impairments must be considered in combination, and then specifically stated that Plaintiff did not have an "impairment or combination of impairments" which met or equaled the criteria of the Listing

13

of Impairments. (Tr. 186-87, 88). At step three, the ALJ ruled out Plaintiff's impairments (asthma, sinusitis and diabetes) as not medically equivalent to the Commissioner's listing. Subsequently, the ALJ analyzed Plaintiff's obesity at length. The ALJ noted that the plaintiff was only "mildly (but not morbidly) obese, according to the medical records of Dr. Fion." (Tr. 190).[4] The ALJ then recited the standard for considering obesity in conjunction with other impairments, concluding that "there is no evidence to demonstrate that any ailments alleged by Plaintiff and existing from May 24, 1999 to April 6, 2001 was caused or aggravated by Plaintiff's obesity." (Id.) None of the medical reports in the record point to Plaintiff's obesity exacerbating any of her pulmonary ailments. While Plaintiff's initial disability determination listed obesity as a secondary diagnosis, she does not specify how her obesity would alter the 5-step analysis, if it would alter it at all. Therefore the Court rejects Plaintiff's argument that the ALJ failed to consider her conditions in combination.

   *B. Residual Functional Capacity - Step Four.*

   Plaintiff claims that the ALJ failed to provide an adequate analysis for his determination of her residual functional capacity, and that the determination lacks evidentiary support. This argument is meritless; the ALJ's RFC determination was properly supported.

   At step four, the Commissioner must determine, based on "all the relevant medical and other evidence in the record" what work the claimant is still capable of performing despite any limitations. 20 C.F.R. § 416.945(a).  In determining a claimant's RFC, the ALJ must consider all of the evidence

---

   [4] The ALJ reported that Plaintiff was 5"5' in height and weighed 206 pounds at the time she was examined by Dr. Fion. Plaintiff argues in her brief that the decision of the ALJ misstated Plaintiff's height and weight, citing the Appeals Council remand order, which reported that she was 5'2" and 204 pound.(Pl. Br. at 21 (citing Tr. at 207)). The record shows that Plaintiff is recorded as 65 inches tall. (See Tr. 304, 315, 319). However, Plaintiff does not argue that the discrepancy in reported height has any effect on Plaintiff's obesity or ability to work. Therefore the Court need not address this contention.

before him.  Burnett, 220 F.3d at 120.  Additionally, if the ALJ decides to reject any evidence, medical or otherwise, he must explain why he is rejecting it.  Id. at 122.

Based on the medical evidence in the record pertaining to the relevant period of time, the ALJ found that Plaintiff was capable of a wide range of light activity, subject to environmental limitations. (Tr. 190).  The ALJ explicitly reviewed the medical evidence, referring to various specific instances where Plaintiff was evaluated. (Tr. 189). He noted that "during the relevant period at issue, no treating or consultative medical source has opined that the claimant was 'disabled.'" (Tr. 190). The ALJ also rejected Plaintiff's testimony of disabling shortness of breath, explaining that it was not "credible based upon the applicable reports from treating medical sources," as required by Burnett. (Tr. 189). The ALJ also refers to the treadmill test relied on so heavily by Plaintiff, stating that the claimant only had a moderate degree of asthma, and "while [she] did have 'poor exercise tolerance' . . . [no medical expert] stated during the relevant period at issue that all physical exertion and substantial gainful activity would be contraindicated by the claimant's alleged asthma." Id. Additionally, as established above, the record presents no evidence of Plaintiff's obesity affecting her ability to work or exacerbating her pulmonary condition. The record provides clear and convincing evidence, which the ALJ appropriately explained, to establish the RFC.

Plaintiff argues that this Court should be persuaded by the fact that Plaintiff was found disabled by a separate ALJ shortly after she was denied her benefits in the case at bar.  This Court is only obligated to look at the record for the period of May 24, 1999 to April 6, 2001, and there is substantial evidence to support the Commissioner's determination that Plaintiff was not disabled during that time period.

**V.**     CONCLUSION

For the aforementioned reasons, the ALJ's decision is **affirmed**.  An appropriate Order

accompanies this Opinion.


                                                    S/ Dennis M. Cavanaugh
                                                  Dennis M. Cavanaugh, U.S.D.J.


Dated:        August 31, 2010
Original:     Clerk
cc:           All Counsel of Record
              File